UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

MARTHA A. VIA, INDIVIDUALLY AND AS
ADMINISTRATRIX AND FOR AND ON BEHALF OF
THE ESTATE AND THE WRONGFUL DEATH
BENEFICIARIES OF DANNY L. VIA, SR.                                                  PLAINTIFF

V.                                                              CIVIL ACTION NO.: 3:08CV742 DPJ-FKB

UNITED STATES OF AMERICA                                                           DEFENDANT

ORDER

This wrongful-death action is before the Court on the motion of Defendant the United States for partial summary judgment [62] pursuant to Federal Rule of Civil Procedure 56. Plaintiff Martha Via has responded in opposition and alternatively moved for a continuance [69] pursuant to Rule 56(d).  The Court having considered the memoranda and submissions of the parties, along with the pertinent authorities, finds Defendant's motion for partial summary judgment [62] should be granted and Plaintiff's motion for a continuance [69] should be denied.

I.      Background

Plaintiff Martha Via alleges her husband Danny Via died due to the negligence of the Veterans' Administration Medical Center.  The issue presented by the motion is whether Dr. Fred Rushton; resident physicians Bryan Gaspard, Dawn Talbott, and Hamilton; and Nurse Megan Horne are federal employees for purposes of the Federal Tort Claims Act (FTCA). Defendant insists they are not and accordingly seeks partial summary judgment in its favor as to claims related to the conduct of these individuals.

II.     Rule 56(d)

In her Response to Defendant's motion, Via incorporated a request for a Rule 56(d) continuance.[1] Rule 56(d)(1) permits the Court to defer considering a summary-judgment motion or deny it when a nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" to the motion. Alternatively, the Court may "allow time to obtain affidavits or declarations or to take [additional] discovery." *Id.* 56(d)(2). "The decision to grant or deny a [Rule 56(d)] motion is within the sound discretion of the district court." *Johnson v. Hinds Cnty., Miss.*, 237 F.3d 632, No. 00-60098, 2000 WL 1701835, at *1 (5th Cir. Nov. 3, 2000) (unpublished table decision).[2]

To establish a right to relief, Via must show "by affidavit or declaration" that there are "specific reasons" she cannot present essential facts to oppose Defendant's Motion. And she "must set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (citations and quotations omitted).

Via avers that she is "entitled to a Rule 56(d) continuance in order to depose the Affiants [Dr. Rushton, Olive Crotwell, and Megan Horne] relative to their 'Declarations' and discover other information relative to the Declarations." Pl.'s Resp. at 2. She characterizes Rushton's Declaration as "newly presented evidence," Pl.'s Resp. at 5, and maintains that facts asserted by

---

[1]Via separately docketed her response [67, 68] as a motion for a continuance [69].

[2]Rule 56(d) was formerly Rule 56(f).

Crotwell and Horne "were only disclosed to the Plaintiffs in accompaniment with the instant Motion." Pl.'s Resp. at 12.

Via has not met her burden. First, she failed to attach an affidavit or declaration as required by the rule. *See*, *e.g.*, *Shoemaker v. Robinson*, No. 3:09–CV–645–DPJ–FKB, 2011 WL 679206, at * 3 (S.D. Miss. Feb. 16, 2011) (denying plaintiff's Rule 56(d) motion, in part, because it was not accompanied by a supporting affidavit or declaration). More importantly, the Court finds discovery in this case was not diligently pursued. *See Wichita Falls Office Assocs. v. Banc One Corp.*, 978 F.2d 915, 919 (5th Cir. 1993) ("[T]he non-movant must diligently pursue relevant discovery—the trial court need not aid non-movants who have occasioned their own predicament through sloth."). Defendant disclosed all of these individuals during discovery, but Via chose not to depose them—or anyone. *See* Magistrate Judge Ball's Order [65] ("[T]he docket does not indicate that Plaintiff conducted any discovery from the date of the initial case management order, August 25, 2010, until April 13, 2011. Furthermore, it does not appear that Plaintiff has noticed any depositions to date, despite having had over a year to do so.") (denying Plaintiff's motion to amend scheduling order ). Plaintiff's motion for a continuance [69] is denied.

III.    Summary Judgment Standard

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's

3

case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324. Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Instead, when the movant shows the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995).

IV.  Analysis

Defendant contends that it is not liable for the conduct of Doctors Gaspard, Talbott, and Hamilton or Nurse Horne because they are independent contractors, not federal employees, for FTCA purposes. Under the FTCA, the government has waived sovereign immunity and can be sued for acts committed by "any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). "This consent to be sued, though, does not extend to the acts of independent contractors." *Broussard v. United States*, 989 F.2d 171, 174 (5th Cir. 1993) (citing 28 U.S.C. § 2671) (other citations omitted). Whether an individual is a

4

federal employee or independent contractor under the FTCA is a question of law. *See Duplan v. Harper*, 188 F.3d 1195, 1200 (10th Cir. 1999) (holding that an individual's status as a government employee for the purpose of the FTCA is a question of law); *Linkous v. United States*, 142 F.3d 271, 275 (5th Cir. 1998) (applying a de novo standard of review applicable to questions of law). Significantly, courts must strictly construe all waivers of the federal government's sovereign immunity and resolve all ambiguities in favor of the sovereign. *Linkous*, 142 F.3d at 275 (citing *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33 (1992)).

### A. Independent Contractor Test

In *Peacock v. United States*, the court listed several factors relevant to the independent contractor exception:

> (a) the extent of control which, by the agreement, the master may exercise over the details of the work;
>
> (b) whether or not the one employed is engaged in a distinct occupation or business;
>
> (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
>
> (d) the skill required in the particular occupation;
>
> (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
>
> (f) the length of time for which the person is employed;
>
> (g) the method of payment, whether by the time or by the job;
>
> (h) whether or not the work is a part of the regular business of the employer;
>
> (i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.

597 F.3d 654, 659 (5th Cir. 2010) (citing *Linkous*, 142 F.3d at 275).  "The key inquiry 'in determining whether an individual is an employee of the government or an independent contractor is the power of the federal government to control the detailed physical performance of the individual.'"  *Id.*

Before examining the factors, a word on the burden of proof is necessary.  As noted above, the moving party under Rule 56 has the initial burden of showing an absence of disputed material fact.  Summary judgment is then mandated if a party "fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp.*, 477 U.S. at 322.  For the reasons that follow, the Court concludes that Plaintiff carries the burden of showing that the healthcare providers were government employees because it is a matter of subject-matter jurisdiction.

Although no Fifth Circuit case appears to directly analyze the burden of proof as applied to the independent contractor exception, the court has held that the exception is a jurisdictional issue.  Thus, "if the act was not committed by an 'employee of the Government,' then the court must dismiss for lack of subject matter jurisdiction."  *Linkous*, 142 F.3d at 275 (holding that district court lacked jurisdiction to hear case involving acts of an independent contractor).  And the Fifth Circuit has noted in other FTCA contexts that "the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist."  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *see also Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).

Other courts have stated more directly that the burden is on the plaintiff to show that the disputed individual is an employee and not an independent contractor.  *See Irwin v. United*

*States*, No. 2:06CV141-P-A, 2007 WL 2727253, at *5 (N.D. Miss. Sept. 12, 2007) (holding that "plaintiff bears the burden of proving under federal law that the allegedly negligent actor was an employee of the government, and not an independent contractor, within the meaning of the Act") (citations omitted); *Glomb v. United States*, No. C-06-473, 2007 WL 2471509, at *9–2 (S.D. Tex. Aug. 28, 2007) (same) (citing *Giles v. United States Dept. of Housing and Urban Dev.*, No. Civ. A. 96-3749, 1997 WL 218215, at *2 (E.D. La. Apr. 30, 1997) ("To overcome the independent contractor exception of the FTCA, plaintiff must show that the contractor's day-to-day operations are supervised by the Federal Government.") (citation and quotations omitted)); *Gerth v. United States*, No. 03 Civ. 3708(PKC), 2007 WL 2324324, at *4 (S.D.N.Y. Aug. 15, 2007) ("[D]espite plaintiff's assertion otherwise, the burden is on plaintiff, not the Government, to demonstrate that the independent contractor exception does not apply."); *Ryan v. United States*, 304 F. Supp. 2d 678, 685 (D. Md. 2003) (holding that "to overcome the independent contractor exception, a claimant must establish that the government managed the details or ran the daily routine of the activities constituting the alleged tortious conduct") (citations and quotations omitted). *But see Morris v. United States*, No. CV-07-1837-PHX-PGR, 2009 WL 2486013, at *4 (D. Ariz. Aug. 12, 2009) (holding that defendant has the burden of establishing the independent contractor exception). Thus, Plaintiff has the burden of showing that the healthcare providers were employees for purposes of the FTCA.

    B.    Individual Healthcare Providers

        1.    Dr. Rushton

Courts typically find that physicians are independent contractors under facts like those presented. *See Creel v. United States*, 598 F.3d 210, 215 (5th Cir. 2010) (finding an orthopedic

surgeon was an independent contractor); *Peacock*, 597 F.3d at 659 (finding a cardiologist was an independent contractor); *Linkous*, 142 F.3d at 275 (find an obstetrician was an independent contractor). Here, Via concedes that Dr. Rushton was an independent contractor and therefore Defendant is not liable for his actions. The parties differ, however, as to whether Nurse Horne and the resident physicians are VA employees or independent contractors.

2. Nurse Horne

It is undisputed that Nurse Horne worked at the VA by virtue of a contract between the VA and Southern Healthcare Agency for the provision of nursing services. *See* Declaration [62-2] of Olive Crotwell, the Clinical Director for Southern Healthcare Agency (Southern Healthcare). In its motion, Defendant insists that Nurse Horne is an independent contractor, while Plaintiff argues she is a VA employee. The parties have not directed the Court to any cases from the Fifth Circuit addressing independent contractor status as applied to nurses, and the two district court cases they cited reach opposite results. *Compare Quintana v. United States*, Civil Action No. 06-cv-01342, 2008 WL 731115 (D. Colo. Mar. 17, 2008) (finding a contract nurse was a VA employee); *with Garcia v. Reed*, 227 F. Supp. 2d 1183 (D.N.M. 2002) (finding a contract nurse anesthetist was an independent contractor).

A written contract existed between Southern Healthcare and the VA, and Defendant relies on various provisions of that contract to support its position that Nurse Horne was an independent contractor. For example, the contract provides that Southern Healthcare is responsible for professional liability insurance, workers compensation, income tax withholding, and social security payments. Contract [62-2] at 15, ¶ 5. The contract also provides: "The

parties agree that the contractor, its employees, agents and subcontractors *shall not be considered VA employees for any purpose*." Contract [62-2] at 15, ¶ 5 (emphasis added).

But as Plaintiff observes, that same contract explicitly states, "The services to be performed by the contract will be performed in accordance with VA policies and procedures and the regulations of the medical staff by laws of the VA facility" and "[t]he services to be performed by the contractor will be under the direction of the Chief of Staff, and the Executive Chief Nurse." Contract [62-2] at 14, ¶ 1. The Court notes also that the contract provides, "The Contractor personnel shall work *under the supervision* of the G.V. (Sonny) Montgomery VA Medical Center's Nursing Service to administer the designated duties. Further, personnel provided shall perform the work with the departmental members to provide the best care possible to our veteran population." Contract [62-2] at 12, ¶ 6 (emphasis added). Thus, while the contract states that Nurse Horne is not to be considered a VA employee, it also specifies that she is subject to "direction" and "supervision" by VA senior staff.

It should be noted that the contract is not necessarily dispositive. As the Fifth Circuit noted in *Linkous v. United States*, "[i]ndividuals can contract directly with the government and remain independent contractors, as long as the agreement between the parties does not grant the government control over the *detailed physical performance* of the individual, and the remaining factors weigh in favor of independent contractor status." 142 F.3d at 277 (emphasis added). The Court therefore turns to the *Peacock* factors.

Looking first to factor (a)—extent of control which, by agreement, the master may exercise over the details of the work—Plaintiff has not made a sufficient showing. As stated, the Contract states that Nurse Horne was generally under the supervision of the Chief of Staff and

9

the Executive Chief Nurse. But Plaintiff has offered no evidence showing the extent, if any, to which the parties agreed that these individuals, or any other VA employees, would exercise control over the "details of the work." *See Creel*, 598 F.3d at 214 (reversing and holding that similar provisions in doctor's contract were not sufficient to create federal-employee status); *Garcia*, 227 F. Supp. 2d at 1190–95 (rejecting similar argument as to nurse).

Other record evidence also mitigates against finding a sufficient level of control. For example, the contract itself states that Nurse Horne and other providers subject to the contract "shall not be considered VA employees for any purpose." Contract [62-2] at 15, ¶ 5. In addition, there is no dispute that Dr. Rushton, an independent contractor, was Via's primary physician. It is therefore unclear whether the details of Nurse Horne's work were controlled by VA employees or Rushton, an independent contractor. "The key inquiry 'in determining whether an individual is an employee of the government or an independent contractor is the power of the federal government to control the detailed physical performance of the individual.'" *Peacock*, 597 F.3d at 659 (quoting *Linkous*, 142 F.3d at 275); *see also Quintana*, 2008 WL 731115 (focusing on the control the VA had over the nurse); *Garcia*, 227 F. Supp. 2d 1183 (same). Plaintiff has not met her burden of showing a sufficient level of control to create employee status.

Factors (b) through (d) examine the occupation, whether it is normally under direction, and the skills required. As with the other factors, these factors are drawn from the Restatement Second of Agency § 220. Comment e to that section explains as follows:

> The important distinction is between service in which the actor's physical activities and his time are surrendered to the control of the master, and service under an agreement to accomplish results or to use care and skill in

>accomplishing results.  Those rendering service but retaining control over the manner of doing it are not servants.

Restatement Second of Agency § 220, cmt. e.  The Court could easily picture circumstances where a nurse would be a government employee.  But on the other hand, nurses are specially trained and licensed, and they exercise care and skill that average citizens do not.  Here, the record fails to explain the tasks Nurse Horne performed, the skill level required, the supervision that would be necessary, who supervised her work—if anyone—, whether the supervisors were VA employees, and the extent to which they may have supervised the details of her work.  Thus, these factors do not weigh in favor of finding governmental-employee status.

In addition, other factors clearly support a finding that Nurse Horne was an independent contractor.  First, as to factor (f), Nurse Horne worked at the VA for a short period of time—approximately 3 ½ months.  Second, she was paid by Southern Healthcare which also paid her professional liability insurance, provided workers compensation, withheld income taxes, and made social security payments.  Horne Declaration ¶ 4; Contract [62-2] at 15, ¶ 5.  These facts demonstrate that factor (g)—regarding payment—weighs in favor of independent contractor status.

The withholding of taxes and payment of liability insurance also suggest that factor (i)—whether the parties believed that a "master and servant" relationship had been formed—weighs in favor of independent contractor status.  *See Creel*, 598 F.3d at 214–15 (observing that "[i]f [the contractor] believed she was becoming an employee of [the Government], then there would have been no need for her to indemnify the government for her negligence") (citing *Linkous*, 142 F.3d at 277).  Other evidence buttresses this finding.  For example, Nurse Horne stated in her declaration that she did not believe the VA was her

11

employer. Horne Declaration ¶ 4. Her declaration is consistent with the express terms of the contract, which state that the "parties agree that the contractor, its employees, agents and subcontractors shall not be considered VA employees for any purpose." Contract [62-2] at 15, ¶ 5. Other cases have cited this language in finding that the disputed employee was an independent contractor. *See Creel*, 598 F.3d at 214–15; *Peacock*, 597 F.3d at 660.

Against these factors, the VA provided the place of work and is in the regular business of providing healthcare to veterans. Therefore, factors (e), (h), and (j) weigh in favor of finding federal-employee status. *See Peacock*, 597 F.3d 659–60 (noting the Dallas VA was "in the business of providing a wide range of medical services, therefore factors (h) and (j) weighed in favor of finding the doctor was a VA employee). But as in *Creel*, these factors do not carry sufficient weight to overcome the balance of the evidence. *Creel*, 598 F.3d at 214–15 (reversing denial of summary judgment).

The Court recognizes that nurses and doctors are necessarily different and cases like *Creel* are not dispositive. That said, the case must be decided on the record presented, and after considering the *Peacock* factors, the Court finds that Plaintiff has failed to prove that Nurse Horne was a VA employee. Defendant's motion for summary judgment is therefore granted as to Nurse Horne.

### 3. Doctors Gaspard, Talbott, Hamilton

At the time of Mr. Via's hospitalization, Doctors Gaspard, Talbott, and Hamilton were resident physicians at University of Mississippi Medical Center. Plaintiff insists that, while

these residents are normally employees of UMMC, they can also be considered employees of the VA hospital under the borrowed servant doctrine.[3]

Mississippi law recognizes the doctrine of the "borrowed servant" where a person who is under the employment of one employer may be temporarily loaned to another employer, in which circumstance "[t]he borrower . . . becomes the employer to the exclusion of the lender." *Quick Change Oil & Lube, Inc. v. Rogers*, 663 So. 2d 585, 592 (Miss. 1995); *see Starnes v. United States*, 139 F.3d 540, 542 (5th Cir. 1998) (looking to Texas law to define the borrowed-servant doctrine). Under Mississippi law, one of the key inquiries is who controls or has the right to control the workman as to the work being performed. *Gorton v. Rance*, 52 So. 3d 351, 359 (Miss. 2011).

This same inquiry was applied in *Costa v. United States*, where the court examined the borrowed-servant theory as applied to resident physicians assigned to a VA hospital. The district explained as follows:

> While there, [the residents] had no independent patient load, nor did they have the privilege to admit patients. At all times they were subject to direct supervision and control by attending VA physicians. Neither ever used independent judgement in the treatment of a patient. As residents, they observed and often gave input into patient care, but final decisions were made by either a senior resident or the attending physician. Although [the residents] were employees of their respective residency programs, it is clear to the Court that while they served

---

[3]The "borrowed servant" doctrine most frequently arises as a defense to an FTCA claim. "Under the FTCA, the United States can assert the same defenses available to private citizens, including the borrowed servant defense." *Starnes v. United States*, 139 F.3d 540, 542 (5th Cir. 1998). Thus, the United States can seek to avoid liability by arguing that its employee was a borrowed servant at the time of the incident. When such a *defense* is raised, it is considered under state law. *See id.* Here, Plaintiff seeks to use the theory to create jurisdiction, which is generally decided as a matter of federal law. *Rodriguez v. Sarabyn*, 129 F.3d 760, 765 (5th Cir. 1997). Nevertheless, the parties explore the issue under state law, so the Court will examine the issue in that context.

>   at the VA Hospital they were under the complete control of the Hospital through its employees.

845 F. Supp. 64, 68-69 (D.R.I. 1994) (finding medical residents should be considered VA employees); *see also Ezekiel v. Michel*, 66 F.3d 894 (7th Cir. 1995) (finding a medical school resident assigned to the VA was subject to the supervision and control of the VA hospital staff and should be considered a federal employee within the meaning of the FTCA).

The facts of this case are different. As the Government notes, these residents were under the supervision and direction of Dr. Rushton, a University employee and independent contractor—not under the control of a VA physician. Defendant supports the assertion with Dr. Rushton's declaration, in which he states:

>   4. Mr. Danny Via was one of the patients for which I provided care. I was the attending physician for Mr. Via on June 15, 2006, when he presented for bilateral angioplasty and stenting of both common iliac arteries. I remained the attending physician for Mr. Via during his entire stay at the VA Medical Center on June 15 and 16, 2006.
>
>   5. At various times, Mr. Via was attended by certain UMMC surgery residents/fellows. Because I was the attending physician, I was responsible for the supervision of these residents/fellows in their care of Mr. Via. At all times, residents/fellows attending Mr. Via were to report his status to me to establish proper care regimen for Mr. Via.

Rushton Declaration [62-1] ¶¶ 4, 5.[4] The Government relies also on various provisions of the Physicians Services Contract, which incorporates the By-Laws and Rules of the VA. Rushton Declaration, Exh. A [62-1] . This agreement provides, *inter alia*:

---

[4] Plaintiff attacks Dr. Rushton's declaration as conclusory, but it is not. The declarant stated alleged historical facts—not conclusions—and those assertions were buttressed by medical records and the terms of the Physicians Services Contract.

> Responsibility for the care of each patient lies with the staff physician/dentist to whom the patient is assigned; and *supervision of residents providing care is, likewise, the responsibility of the staff physician*.
> . . .
> Within the scope of the training program, *all residents must function under the supervision of supervising practitioners*.
> . . .
> The term "resident" refers to an individual who is engaged in a graduate training program in medicine . . . and who participates in patient care under the direction of supervising practitioners.
> . . .
> The supervising practitioner is responsible for, and must be personally involved in, the care provided to individual patient . . . .
> . . .
> Documentation of supervision must be entered into the medical record by the supervising practitioner or reflected with the resident progress note or other appropriate entries in the medical record . . . .

*Id.* at 46, 53-56 (emphasis added). Finally, the medical records demonstrate that the residents were under Dr. Rushton's supervision with respect to Mr. Via's treatment.

Via attempts to meet this evidence by citing the Memorandum of Affiliation between UMMC and the VA, which states:

> VA and the affiliated academic institution have a shared responsibility for the academic enterprise. In coordination with VA staff, the faculty of the academic affiliate has primary responsibility for the assignment and supervision of students and/or residents in their academic program(s). VA retains full responsibility for the care of patients, including the administrative and professional functions pertaining thereto. While in the VA facility, students and residents are subject to VA rules and regulations.

Pl.'s Resp., Exh. G [67-7] at 4. Although she focuses her attention on the VA retaining "full responsibility for the care of patients" and the residents being "subject to VA rules and regulations," Plaintiff ignores the provision that the "academic affiliate has primary responsibility for the . . . *supervision* of students and/or residents." Pl.'s Resp. at 10, Exh. G at 4

15

(emphasis added). Thus, the agreement does not support a finding that the resident physicians were VA employees.

As stated, the primary inquiry is "who controls or has the right to control the workman as to the work being performed"—the employing institution (UMMC) or the one borrowing the employee (VA). *Gorton*, 52 So. 3d at 359. In this case, the Memorandum of Affiliation, Dr. Rushton's unrebutted declaration, and the medical records regarding Mr. Via's treatment all demonstrate that the resident physicians were controlled by a supervising physician who was an independent contractor and a professor/physician at UMMC—not a VA employee. *Compare Klein v. Miller*, No. Civ. A.SA-02-CA-687FB, 2004 WL 1118725, at *11 (W.D. Tex. Mar. 30, 2004) (finding residents were directly supervised and trained by University of Texas physicians, not VA physicians, and the VA was not liable for their actions); *Ezekiel*, 66 F.3d at 894 (finding the resident was subject to the supervision and control of the VA hospital staff and should be considered an employee of the government); *Banks*, 623 F. Supp. 2d at 754 (finding Air Force resident "acting under the supervision, direction and control of UMMC" was a borrowed servant of UMMC); *Costa*, 845 F. Supp. at 69 (finding the residents were subject to direct control and supervision by VA physicians and concluding the residents should be considered employees of the VA).

Finally, the facts of this case are analogous to *Starnes v. United States*, 139 F.3d 540 (5th Cir. 1998). There, the plaintiffs alleged that an Army resident acted negligently during his surgical rotation at a private hospital. The government filed a motion to dismiss, arguing that the resident was a "borrowed servant" of the private hospital, and the district court granted the motion. *Id.* at 542. On appeal, the Fifth Circuit reversed, finding the borrowed-servant defense

did not apply to absolve the government of liability. *Id.* The Court noted that the plaintiffs presented evidence that the private hospital did not supervise or control the treatment rendered by military residents, and instead that "residents are under the administrative direction of physicians who operate independently of the hospital, and that [the hospital] does not direct or control patient care by residents." *Id.* at 543. Here, the VA assumes the role of the "private hospital," allowing residents to render patient care at the VA under the supervision of an independent contractor.

The resident physicians were not borrowed servants in that they remained under the supervision of non-VA employees, and the VA is not liable for their conduct. Defendant's motion is granted as to Doctors Gaspard, Talbott, and Hamilton.

V.   Conclusion

As explained above, the Court finds Defendant's motion should be granted and Plaintiff's motion should be denied. The Government is not responsible for the alleged acts of Dr. Rushton; Doctors Gaspard, Talbott, and Hamilton; or Nurse Horne.

**SO ORDERED AND ADJUDGED** this the 1th day of March, 2012.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE